UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOHN EVERETTE WINTERS                                                           PLAINTIFF

V.                                              CIVIL ACTION NO. 3:21-CV-742-KHJ-MTP

ERIC SHAWHAI FENG, et al.                                                    DEFENDANTS

ORDER

Before the Court is Defendant Eric Shawhai Feng's [59] Motion for Attorney Fees and [76] Motion to Strike Plaintiff John Everette Winters's Response in Opposition to Feng's Motion for Attorney Fees. Also before the Court is Arby's Restaurant Group, Inc., and Sybra, LLC's (collectively, "Arby's") [66] Motion for Extension of Time to File a Motion for Attorney Fees and [68] Motion for Attorney Fees. For the following reasons, the Court grants Feng's motions, denies Arby's motion for an extension of time, and denies as moot Arby's motion for attorney's fees.

I.  Background

This is the second lawsuit arising from a commercial lease. *See Winters v. Feng*, 320 So. 3d 1235, 1240 (Miss. Ct. App. 2020). In 2015, Winters and Feng entered into a written agreement for Feng to lease commercial property in Lowndes County, Mississippi. *Id.* at 1237; Compl. [1] ¶ 1. Feng intended to operate an Arby's restaurant, so he subleased the property to Defendant Sybra, LLC, a subsidiary of

Defendant Arby's Restaurant Group. [1] ¶ 24. Since then, Winters filed two lawsuits concerning the Lease. *See id.* ¶ 11.

The first lawsuit concerned Feng's compliance with the Lease's requirements. *Id.* A Mississippi trial court granted summary judgment in Feng's favor, and it ordered Winters to pay Feng's attorney's fees. *See Winters,* 320 So. 3d at 1241. Winters appealed. *Id.* at 1242. The Mississippi Court of Appeals affirmed and ordered Winters to pay Feng's attorney's fees incurred on appeal. *See* [71-1]. Despite this, Winters filed the second lawsuit, and Defendants successfully moved for summary judgment based on res judicata. *See* [42], [46], [57]. The Court now considers Defendants' motions for attorney's fees incurred in this second lawsuit.

The parties submitted several filings, and the Court must address two motions before determining any award. First, Winters filed a sur-reply to Feng's [70] Reply in Support of Motion for Attorneys' Fees, and Feng moves to strike that sur-reply. *See* [76]. Second, because Arby's failed to file a motion for attorney's fees within the permitted 14-day window, it now seeks an extension to file outside the deadline. *See* [66], [68].

Therefore, Feng's [59] Motion for Attorney's Fees involves Winters's [71] Sur-Reply and Feng's [76] Motion to Strike that Sur-Reply. And Arby's [68] Motion for Attorney's Fees involves the [66] Motion for Extension of Time. To avoid confusion, the Court begins with the standard for awarding attorney's fees because it applies uniformly to both Defendants. The Court then addresses the motions specific to each Defendant.

2

II.  Standard

When "a federal court has jurisdiction based on diversity of citizenship, state law governs the award and reasonableness of attorneys' fees." *Affordable Care, LLC v. JNM Off. Prop., LLC*, No. 1:19-CV-827, 2022 WL 3271092, at *3 (S.D. Miss. Aug. 10, 2022) (citing *Bank of La. v. SunGard Availability Servs., L.P.*, 374 F. App'x 539, 542–43 (5th Cir. 2010)). Under Mississippi law, courts must enforce a "clear and unambiguous" contractual provision awarding attorney's fees. *Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100, 1113 (Miss. 2007) (quoting *Hamilton v. Hopkins*, 834 So. 2d 695, 700 (Miss. 2003)).

Mississippi Rule of Professional Conduct 1.5(a) provides that "[a] lawyer's fee shall be reasonable." To determine whether a fee is reasonable, Mississippi courts consider "the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 521–22 (quoting *BellSouth Pers. Commc'ns, LLC v. Bd. of Supervisors of Hinds Cnty.*, 912 So. 2d 436, 446–47 (Miss. 2005)). The total calculation is known as the "lodestar" rate." *See id.*

Mississippi courts then decide whether to reduce the lodestar rate based on several factors outlined in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982):

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment;
>
> (3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing services; and

(8) whether the fee is fixed or contingent.

III. Analysis

A. Feng's Motion for Attorney's Fees

The Court begins with Feng's [59] Motion for Attorney's Fees, which involves Winters's [71] Sur-Reply and Feng's [76] Motion to Strike that Sur-Reply. Because the plain terms of the Winters-Feng agreement entitle Feng to attorney's fees, the Court only considers whether to strike the Sur-Reply and the appropriate amount of Feng's award.

1. Winters's Sur-Reply

"Rule 7 of the Local Rules of Civil Procedure contemplates only the filing of: (1) a motion; (2) a response; and (3) a reply." *Brown v. Wiggins*, No. 3:18-CV-487, 2019 WL 3723628, at *1 (S.D. Miss. Aug. 7, 2019); L.U. Civ. R. 7(b)(4). "Leave of court is required to file an additional brief . . . ." *Id.* (quoting *Kennedy v. Jefferson Cnty., Miss. ex rel. Bd. of Supervisors*, No. 5:13-CV-226, 2014 WL 12773803, at *1 (S.D. Miss. Oct. 28, 2014)).

"[S]urreplies are heavily disfavored by courts." *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) (quotation omitted). They "often amount to little more than a strategic effort by the nonmovant to have

the last word on a matter." *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 359 (W.D. Tex. 2020) (quoting *Weems v. Hodnett,* No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011)). "Leave to file should be granted [only] when judicial experience and common sense deem it appropriate, bearing in mind the invidious stratagems warned of by our sister districts." *Kennedy*, 2014 WL 12773803, at *1. "Some factors to consider include whether new arguments actually have been raised in the reply brief and whether these arguments have been identified in the motion for leave to file." *Id.*; *see also Univ. of Miss. Med. Ctr. v. Sullivan*, No. 3:19-CV-459, 2021 WL 5414301, at *1 (S.D. Miss. Oct. 7, 2021) ("Leave of court to allow a sur-reply has been found appropriate where the moving party raised new arguments in the reply brief that went beyond rebutting the response.").

Feng's [70] Reply does not raise new arguments. Because Winters's Sur-Reply merely responds to Feng's assertions in the Reply, *see* [64] Amended Response, the Sur-Reply is an attempt to have "the last word on a matter" rather than an "appropriate" response to a new argument. *See Mission Toxicology*, 499 F. Supp. 3d at 359; *Sullivan*, 2021 WL 5414301, at *1. Winters's pro se status "does not relieve him of the duty to abide by procedural rules . . . ." *See May v. Univ. of Miss. Med. Ctr.*, No. 3:11-CV-665, 2015 WL 1540429, at *3 (S.D. Miss. Apr. 7, 2015) (citation omitted). For those reasons, the Court grants Feng's [76] Motion to Strike Winters's Sur-Reply and turns to Feng's Motion for Attorney's fees without considering the Sur-Reply or any attachments.

2. Feng's Attorney's Fees

The Court considers the plain language of the Lease Agreement:

> Both parties agree to the award of attorneys' fees, court costs and all other expenses related to any lawsuit or any action involving this Lease.

[1-1] ¶ 8. Because the contractual language is unambiguous, the Court does not question whether Feng is entitled to recover. *See Upchurch*, 964 So. 2d at 1113 (enforcing unambiguous contractual provision for attorney's fees). Instead, the Court only considers the reasonableness of the award. *See Tupelo Redevelopment Agency*, 972 So. 2d at 521 (identifying the "controlling factor" for calculating attorneys' fees as "what is reasonable").

Winters argues that the Court should adjust any award to one-half or less of what the Mississippi Court of Appeals awarded. [64] at 5. Winters relies on the Mississippi Court of Appeals' order in the first lawsuit that granted an additional one-half of the attorney's fees already awarded by the trial court. [62-1] at 2 ("This Court generally awards half of the fees allowed by the trial court *when a party is required to defend an attorney's fee award in his favor*.") (emphasis added). Winters's reliance on the order is misplaced. The order pertains to the appellate review of the state trial court's award of attorney's fees in the first lawsuit. *See* [62-1]. Sitting as a federal trial court, the Court is considering the initial award of attorney's fees in this second lawsuit. The Court cannot apply a one-half reduction based on an amount it has not yet awarded.

Next, Winters argues for a reduction in the award because the second lawsuit "was less time[-]consuming" and only spanned "one year and four months, as

6

opposed to . . . four and one-half years" for the first lawsuit. [64] at 5. But the standard for calculating attorney's fees is not how long a case stays on the Court's docket. *See BellSouth*, 912 So. 2d at 446–47 (calculating attorney's fee award based on hours expended and hourly rate). As for Winters's arguments on prior overpayments in the first lawsuit, he does not supply sufficient evidence or authority for a reduction based on those grounds. Therefore, the Court turns to the lodestar calculation to determine the amount of Feng's fee award.

a. Lodestar Calculation

Two attorneys and five paralegals from Deaton & Berry, PLLC, performed work for Feng. *See* [60-1] (itemizing work performed and hourly rates charged). The two attorneys were JSD, a partner with over 30 years of experience, and JC, an associate with roughly 14 years of experience.[1] Deaton & Berry's billable hourly rates "were $200.00 for partners, $175.00 for associates, and $75.00 for paralegals." [60] at 4. According to Deaton & Berry, the firm billed 196.8 hours totaling $30,597.00 in fees and $401.10 in expenses. *Id.*

After reviewing Deaton & Berry's invoices, the Court finds that $30,597.00 is an incorrect calculation of fees based on Feng's representation of hourly rates charged. *Id.* Specifically, the invoices show that the firm paid some paralegals $75 per billable hour while it paid others $80 or $90. *See* [60-1], [60-2]. Based on Feng's briefing, the Court prescribed paralegals the billable hourly rate of $75 per hour for

---

[1] To remain consistent with the invoices in the record, the Court names each attorney and paralegal by their initials.

its lodestar calculation. *See* [60] at 4. Accordingly, the invoices illustrate the following hourly breakdown of time spent on this case:

>Partner JSD: 7.3 hours at $200 per hour;
>
>Associate JC: 142.4 hours at $175 per hour;
>
>Paralegal JE: 3.4 hours at $75 per hour;
>
>Paralegal AS: 37.2 hours at $75 per hour;
>
>Paralegal SC: 3.8 hours at $75 per hour;
>
>Paralegal LM: 2.5 hours at $75 per hour;
>
>Paralegal MWH: .2 hours at $75 per hour.

Based on the hours spent multiplied by Deaton & Berry's unopposed hourly rates, the Court's lodestar calculation is $29,912.50.

### b.  McKee Factors

The Court turns to the *McKee* factors to determine whether to adjust the lodestar calculation. Feng concedes the "case was not . . . particularly difficult . . . nor did it require any certain requisite skill . . . ." [60] at 5. But *McKee* does not require the Court to adjust the lodestar calculation if the case lacks complexity. Instead, the essential component is the reasonableness of the award. *See Tupelo Redevelopment Agency*, 972 So. 2d at 52.

Despite its lack of complexity, this case still required extensive time and labor, including drafting and moving for summary judgment. *See* [57] (granting summary judgment based on res judicata). That labor allowed Deaton & Berry to obtain a favorable result for Feng in dismissing this case with prejudice. *Id.* And the

firm's hourly rates are similar to those customarily charged by other lawyers in the region. *See, e.g.*, *Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07-CV-568, 2011 WL 6699447, at *7–12 (S.D. Miss. Dec. 21, 2011) (analyzing lawyer rates in Mississippi). Based on these considerations, the Court finds no need to adjust the lodestar calculation.

### 3. Feng's Costs and Expenses

Feng also seeks $401.10 for his attorney's costs and expenses. [60] at 6. The specific costs include travel, postage, and other expenditures made in litigating this case. [60-1] at 44. The unambiguous terms of the lease allow for such costs and expenses. *See* [1-1] ¶ 33 ("Both parties agree to the award of attorneys' fees, court costs and all other expenses related to any lawsuit or any action involving this Lease."). The Federal Rules also allow for such costs and expenses. *See* Fed. R. Civ. P. 54(d)(1) ("[C]osts—other than attorney's fees—should be allowed to the prevailing party."). As the prevailing party, and per the Lease's terms, Feng is entitled to his attorney's costs of $401.10.

### B. Arby's Motion for an Extension of Time

Federal Rule of Civil Procedure 54(d)(2)(B) provides that a motion for attorney's fees must "be filed no later than 14 days after the entry of judgment." The Court entered judgment on February 24, 2023. [58]. But Arby's did not seek leave to move for attorney's fees until 27 days later. *See* [66]. Arby's request falls outside the timeframe in Rule 54(d)(2)(B). Arby's nevertheless asks this Court to

9

exercise its discretion under Rule 6(b) and grant more time to file. *See* [67] at 3. The Court declines to do so.

1. Rule 6(b)

Federal Rule of Civil Procedure 6(b) grants this Court broad discretion to expand or reopen filing deadlines "for good cause . . . if the party fail[s] to act because of excusable neglect." *See, e.g.*, *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995). "[A] determination of 'excusable neglect' is an equitable conclusion that [is] context-specific . . . ." *Hernandez v. Univ. of Tex.-Pan Am.*, 729 F. App'x 340, 341 (5th Cir. 2018) (per curiam) (identifying danger of prejudice, length of delay, impact on proceedings, justification, and good faith as relevant context-specific factors). The permissive language of Rule 6(b) makes clear that any grant of an extension of time ultimately falls to the Court's discretion. *McCarty v. Thaler*, 376 F. App'x 442, 443 (5th Cir. 2010) (per curiam) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990)).

According to Arby's, its failure to file within the permitted 14-day window constitutes "excusable neglect" because opposing counsel's "death shortly after the entry of the Final Judgment was . . . disconcerting and put this case in a unique posture for proceeding." [67] at 3–4. Winters disagrees and argues that no impediments existed to prevent Arby's from filing during the allotted time. [75] at 5. Winters supports this argument by pointing to co-defendant Feng's ability to make all filing deadlines despite this case's "unique" nature. *Id.* The Court agrees with Winters and rejects Arby's excusable neglect argument.

2. Excusable Neglect

Because Arby's "seek[s] an after-the-fact extension . . . [it] bears [a] heavier burden of demonstrating . . . 'excusable neglect.'" *Rashid v. Delta State Univ.*, 306 F.R.D. 530, 533 (N.D. Miss. 2015); *see also* Fed. R. Civ. P. 6(b)(1).[2] "Bare allegations in [a] motion do not suffice to show excusable neglect, and in the absence of . . . such a showing, the Court should not grant an extension of time . . . ." *Estrada v. United States*, No. 3:04-CV-1394, 2007 WL 2809907, at *1 (N.D. Tex. Sept. 27, 2007); *see also Beaufort Concrete Co. v. Atl. States Constr. Co.*, 352 F.2d 460, 462–63 (5th Cir. 1965) (holding that a party who did not supply an excuse for a late filing could not prove excusable neglect). Arby's broadly asserts that this case is "unique" and that opposing counsel's death was "disconcerting." [67] at 4. But Arby's supplies no insight into how opposing counsel's death prevented its filing a motion, seeking an extension, or notifying the Court of its intention to move for attorney's fees until 13 days after the deadline. Nor does Arby's cite any case law supporting its position.

Further, co-defendant Feng filed his motion for attorney's fees within the 14-day window. Arby's does not explain why opposing counsel's death affected its ability to file but not Feng's. Even with notice of Feng's filing, Arby's still waited 13

---

[2] The Court is skeptical of whether excusable neglect provides a proper basis for argument here. "The excusable neglect standard refers to the missing of a deadline as a result of such things as misrepresentations by judicial officers, lost mail, and plausible misinterpretations of ambiguous rules." 5 Am. Jur. 2d Appellate Review § 277. A common thread is some external factor (mistakes by judges, mail carriers, or rule drafters) that causes confusion about a deadline. But that is not the case here. Arby's knew about the 14-day deadline but still did not seek an extension or explain why its "disconcertion" caused a two-week delay. *See L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 527 (5th Cir. 2021) ("[O]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

11

days past the deadline to seek an extension. Arby's again does not explain this nearly two-week delay. The Court is unwilling to find excusable neglect when Arby's offers no connection between opposing counsel's death and its delayed filings. Therefore, the Court denies Arby's Motion for an Extension of Time to File a Motion for Attorney's Fees and further denies as moot its Motion for Attorney's Fees.

IV.  Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS Defendant Eric Shawhai Feng's [76] Motion to Strike and [59] Motion for Attorney's Fees; DENIES Arby's Restaurant Group, Inc.'s and Sybra, LLC's [66] Motion for Extension of Time to File Arby's Motion for Attorney Fees; and DENIES AS MOOT [68] Arby's Motion for Attorney's Fees. The Court AWARDS Defendant Eric Shawhai Feng his attorney's fees in the amount of $29,912.50 and costs in the amount of $401.10 for a total of $30,313.60.

SO ORDERED, this 1st day of September, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE